**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **BYRON JORDAN,** *et al.,* | * | |
| **Plaintiffs,** | * | |
| v. | * | Case No.: GJH-14-37 |
| | * | |
| **IVERSON MALL LTD.** **PARTNERSHIP,** *et al.,* | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case proceeded to trial on a claim of battery against Defendants Iverson Mall

Limited Partnership ("IMLP") and Defendant Professional 50 States Protection of DC LLC

("Pro50") and a claim arising under 42 U.S.C. § 1983 against Prince George's County on a

theory of bystander liability. The case stemmed, in relevant part, from allegations that while

being placed under arrest by officers with the Prince George's County Police Department at

Iverson Mall, Plaintiff Byron Jordan was punched in the face by a mall security officer employed

by Pro50. On January 24, 2018, the jury returned a verdict finding no liability as to Prince

George's County and its officers, but finding Defendants IMLP and Pro50 liable for battery and

awarding compensatory and punitive damages against both. Several motions were raised before,

during and after trial that are now pending, including Defendants' Motion for Sanctions, ECF

No. 193; and IMLP and Pro50's Motion and Renewed Motion for Judgment as a Matter of Law,

ECF No. 234. Some of these issues were discussed during trial, but no further hearing is

necessary. *See* Loc. R. 105.6 (D. Md. 2016).

## I. DISCUSSION

### A. Motion for Sanctions (ECF Nos. 192, 193)

On December 4, 2017, Defendants filed a Motion for Sanctions. ECF Nos. 192, 193.[1] Defendants argue that Plaintiffs failed to comply with the Court's March 17, 2017 Order establishing pretrial dates and deadlines, along with Local Rule 106.3. ECF No. 193 at 3–4. Specifically, they argue that "Plaintiffs had the responsibility to prepare the first draft of the pretrial order 14 days prior [to] the date on which the pretrial order must be filed," Plaintiffs "failed to do so," and default judgment in favor of Defendants is an appropriate remedy. *Id.* at 4–8. Plaintiffs did not respond to Defendants' motion in writing.

A sanction of default judgment in favor of the defense or dismissal with prejudice is an "extreme sanction," the district court has a "narrow" "range of discretion" in applying such a sanction, and such a sanction should be used in "only the most flagrant case." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). The Court must determine "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Id.*

The circumstances here do not warrant the dismissal of this case with prejudice, or the granting of default judgment in favor of the Defendants. Defendants claim that they "have sustained prejudice" because "[t]his case has been ongoing for over four years" and Plainitffs "have repeatedly slowed this litigation process with claims that were ultimately abandoned or were dismissed outright for failure to state a claim." ECF No. 193 at 7. While Plaintiffs did miss

---

[1] After filing their Motion, Defendants subsequently filed a "Corrected" Motion, which attached a copy of an unreported Fourth Circuit opinion. ECF No. 193.

certain pre-trial deadlines, these oversights occurred at or around the time Plaintiffs' counsel was seeking to have the trial postponed because of difficulties with her office space. Although any missed deadlines are frowned upon by the Court, there was no bad faith and the Court finds there was no prejudice caused by the delayed submissions. Thus, Defendants are not entitled to a sanction of dismissal or an order of default judgment and the Motion for Sanctions is denied.

### B. Motion for Judgment as a Matter of Law (ECF No. 235)

Federal Rule of Civil Procedure 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the party." "When the court defers ruling on such a motion, Rule 50(b) allows a party to renew it after the jury returns a verdict." *Huskey v. Ethicon, Inc.*, 848 F.3d 151, 156 (4th Cir.), *cert. denied*, 138 S. Ct. 107 (2017). "Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. The movant is entitled to judgment as a matter of law if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Singer v. Dungan*, 45 F.3d 823, 826–27 (4th Cir. 1995) (internal quotations and citations omitted).

At the close of Plaintiff's case-in-chief, Defendants made a Motion for Judgment as a Matter of Law on two primary issues. *See* ECF No. 243 at 31. Defendants argued first that "there's been no evidence that the people [Mrs. Jordan] saw [punching Mr. Jordan] were actually employed by Pro50" or Iverson Mall Limited Partnership. *Id.*[2] The Defendants also argued that Plaintiffs' medical experts had not testified to a reasonable degree of medical certainty, thereby

---

[2] Counsel for Prince George's County and the officers also raised arguments in support of a Motion for Judgment as a Matter of Law. As the jury ultimately found Prince George's County and the officers not liable, the Court does not address those arguments here.

making their opinion testimony inadmissible, and that, as a result, there was no evidence that any injuries suffered by Mr. Jordan were caused by the events of May 4, 2013. ECF No. 243 at 36. The Court took the Motion under advisement, and reserved ruling; however, the Court later noted that in deciding the Motion it would only consider evidence that had been introduced at the time the Motion was made at the conclusion of the Plaintiffs' case-in-chief. *Id.* at 125. The Defendants renewed their Motion for Judgment as a Matter of Law at the close of Defendants' case-in-chief. *Id.* at 124. At that point, again, the Court took the Motion under advisement, and reserved ruling. *Id.* at 128.

Following the close of trial and the jury's verdict, the Court welcomed additional written submissions from the parties on the pending Motion for Judgment as a Matter of Law. On February 8, 2018, Plaintiffs submitted their briefing, ECF No. 233, and on February 20, 2018, Defendants submitted theirs, ECF No. 235. Plaintiffs subsequently responded on March 6, 2018, ECF No. 238, to which Defendants replied on March 16, 2018, ECF No. 246.[3] These submissions addressed whether IMLP is entitled to judgment as a matter of law on Plaintiffs' battery claim, whether Pro50 is entitled to judgment as a matter of law on Plaintiffs' battery claim, the award of punitive damages, and whether Plaintiffs' expert testimony was proper. The Court addresses these issues in turn.

### i. Judgment Against Iverson Mall Limited Partnership

While Plaintiffs alleged that Pro50 and Prince George's County employees were the ones who caused harm to Mr. Jordan, they additionally seek liability from IMLP, arguing that IMLP is

---

[3] On April 4, 2018, Plaintiffs filed a Motion for Leave to File Surreply. ECF No. 251. Local Rule 105 (2)(a) provides that "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Plaintiffs do not provide good cause for why the Court should accept their surreply, noting only that "Defendants have asked this Court to take an extraordinary measure in overturning the jury verdict, and Mr. Jordan would like the opportunity to preserve that verdict by briefly addressing issues that are dispositive to the case." ECF No. 251 at 1. The Court did not order the filing of a surreply memorandum, and therefore will not consider Plaintiffs' arguments contained therein. The Court notes, however, that the content of this four-page surreply would not have impacted the Court's analysis.

vicariously liable under a theory of *respondeat superior*. *See* ECF No. 152 at 14 ("Iverson Mall

is liable for PRO50's battery because PRO50 was acting within the scope of its employment with

Iverson Mall."). Under this theory, "an employer may be found liable for torts committed by its

employee while acting in the scope of employment." *Asphalt & Concrete Servs., Inc. v. Perry*,

108 A.3d 558, 580 (Md. App. 2015), *aff'd*, 133 A.3d 1143 (Md. 2016). *Respondeat superior*

"only applies when the relation of master and servant, employer and employee or principal and

agent is shown to exist between the wrongdoer and the person sought to be charged for the result

of the wrong." *Hoerr v. Hanline*, 149 A.2d 378, 381 (Md. 1959). In assessing whether an

employer/employee relationship exists between two parties, Maryland courts consider: (1) the

power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4)

the power to control the employee's conduct, and (5) whether the work is part of the regular

business of the employer. *Asphalt & Concrete Servs., Inc. v. Perry*, 108 A.3d 558, 580 (Md.

App. 2015), *aff'd*, 133 A.3d 1143 (Md. 2016).

Defendants seek judgment as a matter of law in favor of IMLP, arguing that "Plaintiffs

introduced no testimony or documents regarding IMLP, the type of organization that it is, the

nature of its business, whether it owns any property, how it was connected to the events giving

rise to this case, what, if any, relationship it has to the Iverson Mall building, or what, if any,

relationship it has with Pro50." ECF No. 235-1 at 12. Plaintiffs argue that "IMLP cannot argue

post-trial that it is not a proper party to this suit, because it waived that argument very early in

this litigation." ECF No. 233 at 3. *See also* ECF No. 238 at 3–5. Plaintiffs further argue that "the

record powerfully shows that IMLP is synonymous with Iverson Mall," *id.* at 4, and goes on to

reference "evidence presented at the damages portion of the trial that IMLP owned and operated

Iverson Mall," *id.* at 5. Finally, Plaintiffs reference IMLP's answers to Plaintiffs' interrogatories as "stipulat[ing]" certain facts about the relationship between Pro50 and Iverson Mall.

Despite Plaintiffs' contentions, the issue here is not whether IMLP was the proper party for Plaintiffs to file suit against; rather, the issue is whether Plaintiffs introduced sufficient evidence at <u>trial</u> in their case-in-chief from which a jury could reasonably determine that IMLP was liable to the Plaintiffs. And the simple fact is that while there was ample discussion about the fact that this incident took place in or around Iverson Mall and involved security guards who worked at the mall, at the conclusion of Plaintiffs' case-in-chief there had not been any reference to IMLP, as an entity. As such, a reasonable jury could not have determined that IMLP was liable to Plaintiffs, as there was no evidence that IMLP had any relationship with the Pro50 guards, or even owned Iverson Mall. Thus, the Court grants IMLP's Motion, and finds them not liable as a matter of law.

### ii. Judgment Against Pro50

Pro50 argues that "there was insufficient evidence presented by Plaintiff at trial to connect these Pro50 guards to the alleged battery." ECF No. 235-1 at 18. While Pro50 acknowledges that "Helen Jordan testified that she saw two Pro50 guards punch her husband," it argues that "she did not testify who these guards were or how she knew they were employed by Pro50." *Id.* Plaintiffs argue that at trial, "Bell admitted that he and Hunt confronted Byron Jordan, Sr. in the mall," and that the jury could—and obviously did—choose to discredit his testimony that no Pro50 guards punched Mr. Jordan. ECF No. 238 at 5–6. Pro50 responds that "Bell testified unequivocally that he did not punch Mr. Jordan," and that Mrs. Jordan "was unable to identify [the individuals who punched Mr. Jordan] by name." ECF No. 246 at 5.

Here there was sufficient evidence regarding Pro50's liability to send the case to the jury. As Defendants acknowledge, Mrs. Jordan "testified that she saw two Pro50 guards punch her husband," that she described the men, that she identified photographs of the men, and that one of the guards, Antonio Bell, testified. ECF No. 235-1 at 18–19. While Defendants complain that "there was no testimony by any witness identifying who these two men in the photographs" identified by Mrs. Jordan were, *id.*, the jury had the opportunity to review the pictures and see Mr. Bell in person. Thus, a reasonable jury could have credited Mrs. Jordan's testimony that the men in the photographs punched her husband, and concluded based on their own comparison that those men were Mr. Bell and Mr. Hunt. The jury also heard that Bell and Hunt were employed by Pro50, and could have reasonably determined that Pro50 was therefore liable for the actions of its employees. As such, there was sufficient evidence to send the battery claim regarding Pro50 to the jury, and Defendants' Motion on this issue is denied.

### iii. Punitive Damages

Defendants argue that there was insufficient evidence at trial to support a finding of punitive damages against Pro50.[4] First, Defendants argue that a plaintiff seeking punitive damages must prove "actual malice" by clear and convincing evidence. ECF No. 235-1 at 27–28. As applied here, Defendants urge that "there was no evidence that any Pro50 employee acted with deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Id.* at 29 (internal quotations omitted). Plaintiffs argue that "Maryland law enables juries to award punitive damages to intentional tort plaintiffs who show that a defendant's conduct is accompanied by recklessness or wantonness." *Id.*

---

[4] Defendants also argue that there was insufficient evidence to find IMLP liable for punitive damages. As the Court has granted judgment in favor of IMLP on the battery claim, the Court also strikes the award of punitive damages against IMLP, and need not address Defendants' arguments regarding the punitive damages awarded against IMLP.

It is clear that in Maryland, the same standard is applied "in *any* tort case" to prove punitive damages. *Beall v. Holloway-Johnson*, 446 Md. 48, 72 (2016) (quoting *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 469 (1992)) (emphasis in original). That is, a plaintiff must be able to show "to a clear and convincing standard . . . that the tort was committed with 'actual malice.'" *Id.* "Actual malice" constitutes conduct that "was characterized by evil motive, intent to injure, ill will, or fraud." *Id. See also Haeger v. Target Corp.*, No. 11-1280, 2012 WL 2923134, at *2 (D. Md. July 17, 2012) ("Actual malice 'exists if the conduct complained of was performed in such a way . . . to show that it . . . was influenced or motivated by hatred or spite or was performed in order to intentionally or deliberate[ly] injure or cause damage or loss to another person.'") (quoting *Market Tavern Inc. v. Bowen*, 92 Md. App. 622 (Md. Ct. Spec. App. 1992)). Malice need not be directly admitted to; rather, "malice may be inferred through circumstantial evidence." *Rice v. Calvert Cty. Bd. of Cty. Commissioners*, No. 07-1005, 2009 WL 10685346, at *4 (D. Md. Mar. 9, 2009).

Here, the jury heard that Mr. Jordan had a previous encounter with the Pro50 guards, that Mr. Jordan was yelling obscenities at the Pro50 guards, allegedly called them "fake ass rent-a-cops," and told them "he was going to whoop [their] ass." ECF No. 243 at 19–20.[5] The jury also heard Mrs. Jordan testify that later, while Mr. Jordan was on the ground and handcuffed, a Pro50 guard ran up and punched him in the face. ECF No. 239 at 38–39. ("somebody had already handcuffed him . . . Pro50 officers was punching him in the face"). From this, a reasonable jury could have concluded that the Pro50 guard's conduct was "motivated by hatred or spite" as a result of their earlier encounter, or was solely intended to deliberately injure Mr. Jordan. Thus,

---

[5] As they did during argument on this issue, Defendants suggest that it would be an "odd result if a party could receive punitive damages because that party hurled insults at the other party." ECF No. 235-1 at 29 n.7. But the fatal flaw of this argument is revealed just a few sentences earlier in Defendants' brief when it claims, without noting the obvious contradiction, "that [the Pro50 officers] would have no reason to dislike Mr. Jordan." The statements attributed to Mr. Jordan towards the Pro50 officers provide the reason why they may have held malice towards him.

Plaintiffs presented sufficient evidence to send the issue of punitive damages to the jury, and Defendants' Motion is denied on this issue.

### iv. Plaintiff's Expert Testimony

Finally, the parties disagree as to whether Plaintiffs' expert testimony was admissible, and whether Plaintiffs introduced sufficient evidence that Defendants' conduct caused Plaintiff's mental and physical damages. *Compare* ECF No. 235-1 at 20 ("Both experts failed to give opinions regarding the cause of Plaintiff's various alleged injuries within a reasonable degree of certainty in the field for which they were offered as expert witnesses, psychology."), *with* ECF No. 233 at 11–18 (reasoning that both experts testified to a sufficient degree of certainty, and established causation). Plaintiffs alleged that as a result of being struck in the face by Pro50 guards, Mr. Jordan suffered physical injuries, pain and suffering, and loss of consortium. To establish causation, Plaintiffs called two expert witnesses in the field of psychology: Drs. Parker-Lewis and Crumlish.[6] ECF No. 240 at 3.

Defendants, relying on *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982), argue that these experts did not testify to a "reasonable degree of certainty," making their testimony inadmissible lay opinion testimony. ECF No. 235-1 at 21–22. They explain that "neither expert was asked about or testified that they held their opinions to a reasonable degree of psychological certainty," and that "[b]oth experts failed to consider the numerous other potential causes of Plaintiff's injuries." *Id.* at 22–23. Plaintiffs, relying on *Samuel v. Ford*, 112 F. Supp. 2d 460 (D. Md. 2000), argue that the experts did not need to utter the "magic words" that their conclusions were held to a "reasonable degree of certainty." ECF No. 233 at 11–12. Plaintiffs point out that "[u]nder direct and cross examination, both Dr. Parker-Lewis and Dr. Crumlish testified without

---

[6] Dr. Parker-Lewis testified primarily as to Mr. Jordan's alleged post-concussive syndrome and diagnosis of post-traumatic stress disorder ("PTSD"), ECF No. 240 at 74, while Dr. Crumlish testified primarily as to Mr. Jordan's alleged erectile disorder, ECF No. 240 at 99.

hesitation that after a review of the medical history, interviews with Byron Jordan, Sr. and the administering of industry standard tests, the battery he suffered at the hands of Jamal Hunt and Antonio Bell were the cause of his continuing ailments." *Id.* at 14.

In determining whether evidence was sufficient to send an issue to the jury, the Court applies federal rules. *See Young v. United* States, 667 F. Supp. 2d 554, 561 (D. Md. 2009). "[T]he Court may find adequate evidence to create a triable issue of fact with respect to causation only if expert opinion evidence establishes to a reasonable degree of medical certainty that defendant's [conduct] was more likely the cause of plaintiff's injuries than any other cause." *Id.* at 562 (citing *Fitzgerald*, 679 F.2d at 350).

In *Fitzgerald*, a medical malpractice case relied upon heavily by Defendants, *see, e.g.*, ECF No. 235-1 at 21, the Fourth Circuit assessed whether a medical expert had testified as to the causation of certain damages to a "reasonable degree of medical certainty." 679 F.3d at 350 (quoting *Crawford v. Quarterman*, 210 Va. 598 (1970), and *Lindsey v. The Clinic for Women*, 40 N.C. App. 456 (1979). The District Court had granted the defendant's motion for a directed verdict, finding that there was not sufficient evidence of causation to send the case to the jury. *Id.* at 354. On appeal, the Fourth Circuit reasoned that "the opinion testimony of the medical expert may not be stated in general terms but must be stated in terms of a 'reasonable degree of medical certainty.'" *Id.* The Fourth Circuit did not express, however, whether a witness must say the exact words "reasonable degree of medical certainty." In fact, plaintiff's counsel asked the expert whether he held his opinions to "a reasonable degree of medical certainty." *Id.* at 351. The Fourth Circuit did not accept the witness's affirmation on face value, however, and examined the substantive content of the witness's testimony. The Fourth Circuit pointed out that at numerous points, the witness had testified that he could not opine to a reasonable degree of medical

10

certainty that "the plaintiff's injury would not have resulted 'but for' those actions of the defendant." *Id.* at 356. Ultimately, the Fourth Circuit affirmed the district court's directed verdict in favor of the defendant. *See also Blake By and Through Blake v. Juskevich*, 998 F.2d 1008, *3 (4th Cir. 1993) (unpublished) (affirming directed verdict and reasoning that "[t]his is not a case where an expert witness fails to say the magic words 'reasonable degree of medical certainty,' but a situation where a medical expert witness was not sure of his conclusions.")

In *Samuel*, following a products liability trial, the plaintiffs argued that the "the opinion testimony of the Defendant's expert . . . should have been stricken because it was not stated to a reasonable degree of engineering certainty." 112 F. Supp. 2d at 462. Specifically, the expert was not asked the question whether he held his opinions to a reasonable degree of certainty. Then-Magistrate Judge Grimm reasoned that where an expert did not specifically state that his opinion was "to a reasonable degree of certainty," that "[i]f the court determines . . . that the foundational requirements of Rules 401, 403, 702, and 703 are met, the opinion is admissible regardless of whether the 'magic words' have been evoked to elicit it." 112 F. Supp. 2d at 470.

*Samuel*, a persuasive opinion, and *Fitzgerald*, a binding opinion, are not in tension. The Court concludes that, as this Court held in *Samuel*, there is no requirement that an expert use any "magic words" for their opinion to be admissible. However, the expert's testimony taken as a whole must still demonstrate that the expert is confident in his or her opinion to a reasonable degree of certainty, which requires a review of the expert's testimony, as the Fourth Circuit conducted in *Fitzgerald*. This is consistent with the findings of other Circuits who have considered whether an expert witness must utter the "magic words" "reasonable degree of certainty." *See Johnson v. Memphis Light Gas & Water Division*, 695 Fed. App'x 131, 136 (6th Cir. 2017) (reasoning that "there is no 'magic words' test. . . . [S]cientific experts need not attach

11

the modifier 'to a reasonable degree of medical certainty' to their opinions to gain admissibility."); *Estate of Sanders v. United States*, 736 F.3d 430, 437 (5th Cir. 2013) (holding same); *Redland Soccer Club, Inc. v. Department of Army of U.S.*, 55 F.3d 827 (3rd Cir. 1995) (applying Pennsylvania law and determining that an expert need not "include any 'magic words'" for his testimony to be admissible); *United States v. Golden*, 42 F.3d 1392 (7th Cir. 1994) ("The phrase 'reasonable degree of certainty' is commonly used and is 'useful shorthand'; but '[c]are must be taken . . . to see that the incantation does not become a semantic trap and the failure to voice it is not used as a basis for exclusion without analysis of the testimony itself.'" (quoting Wright and Miller, Federal Practice and Procedure § 6641 (1994 supplement))).

The Court finds that despite not saying the "magic words," Dr. Beverly Parker-Lewis stated with a reasonable degree of certainty that Mr. Jordan's physical and mental symptoms were directly caused by the alleged battery he suffered.[7] Dr. Parker-Lewis, a clinical psychologist, testified that she conducted a psychological evaluation with Mr. Jordan. ECF No. 240 at 72. The Defendants did not object to her being tendered as an expert. *Id.* Dr. Parker-Lewis diagnosed Mr. Jordan with post-concussive syndrome and post-traumatic stress disorder ("PTSD"). *Id.* at 74. Dr. Parker-Lewis testified that Mr. Jordan's PTSD would have been caused by the "physical beating that he was subjected to," which "placed him in a situation where he was feeling less than the man that he is." *Id.* at 77. Ultimately, Dr. Parker-Lewis concluded in her "professional opinion" that there was a "very reasonable expectation" that the symptoms he experienced were caused by "the incident of 2013." *Id.* at 84. While cross-examining her,

---

[7] The Court notes that the jury awarded no damages to Plaintiffs for loss of consortium, ECF No. 247 at 2; therefore, the Court does not address the parties' arguments regarding whether there was sufficient causation evidence to send the loss of consortium claim to the jury. This includes Defendants' argument regarding Dr. Crumlish, whose entire testimony was regarding Plaintiff's erectile dysfunction, which served as the basis for the loss of consortium claim. *See* ECF No. 240 at 99–142. Thus, whether Dr. Crumlish's testimony was properly allowed to go to the jury is moot, as the jury ultimately rejected the theory which she was propounding.

Defendants raised many of the concerns they discuss in their Motion and Dr. Parker-Lewis stood by her conclusions. *Id.* at 86–97.

Dr. Parker-Lewis may not have uttered the "magic words" that her opinion was held to a "reasonable degree of certainty," but there is no requirement that she does so. Throughout the course of her testimony, Dr. Parker-Lewis exhibited confidence in her opinions, and stuck by those conclusions through rigorous cross-examinations by two separate attorneys. Thus, having reviewed the content and tone of Dr. Parker-Lewis's testimony, the Court concludes that the opinions were presented to a "reasonable degree of certainty," and that there was sufficient evidence to send the case to the jury regarding the damage claims for Physical Injury and Mental Anguish/Pain and Suffering.

## II.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Sanctions, ECF No. 193 is denied. IMLP and Pro50's Motion and Renewed Motion for Judgment as a Matter of Law, ECF No. 234, is granted-in-part and denied-in-part. A separate Order shall issue.

Date: May 25 , 2018

GEORGE J. HAZEL
United States District Judge